Case No. 12-4248

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CHRISTINE MARAIS

Plaintiff-Appellant

v.

CHASE HOME FINANCE, LLC

Defendant-Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

District Court Case No. 2:11-cv-314

---

**RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY
FILED BY DEFENDANT-APPELLEE JPMORGAN CHASE BANK, N.A.,
SUCCESSOR BY MERGER TO CHASE HOME FINANCE LLC**

---

Troy J. Doucet, Lead Counsel (0086350)
Audra L. Tidball (0087764)
DOUCET & ASSOCIATES, INC.
4200 Regent Street; Suite 200
Columbus, Ohio 43219
(614) 944-5219 Phone
(818) 638-5548 Fax
troy@troydoucet.com
audra@troydoucet.com

*Attorneys for Plaintiff-Appellant*

Plaintiff-Appellant Christine Marais ("Marais") hereby replies to the supplemental authority submitted by Defendant-Appellant JPMorgan Chase Bank, N.A. ("Chase").

*Mourad v. Homeward Residential, Inc.,* No. 12-1880, 2013 WL 870205 (6th Cir. Mar. 8, 2013) is not dispositive of Marais' TILA claim because that case did not involve a claim for violation of 15 U.S.C. § 1641(f)(2), which specifically sets forth an independent obligation on loan servicers. (*See* Brief, ECF pages 15-16; Reply, ECF pages 5-11.) Moreover, *Mourad* recognizes that servicers may be liable as assignees if the servicer is or was the owner of the obligation. *See id.* at *4. Marais asks this Court to take judicial notice[1] of the foreclosure action filed by Chase against Marais, which was raised at oral argument, wherein Chase alleges it is the holder of Marais' note. (Exhibit 1). The filing of the complaint supports Marais' argument that dismissal of this claim at the pleading stage is improper because the very violation by Chase that is the subject of this lawsuit prevented her from alleging beyond a conclusory allegation that Chase was also the creditor or assignee. (Brief, ECF page 19.)

---

[1] Courts may take judicial notice of separate lawsuits. An appellate court may take judicial notice of facts supported by documents not included in the record on appeal. *Bridgeport Music, Inc. v. Smith,* 714 F.3d 932, 936 n.4 (6th Cir. 2013).

*Lessl v. CitiMorgage, Inc.,* No. 11-2285, 2013 WL 610904 (6th Cir. Feb. 19, 2013) is distinguishable from the present case because Marais' Complaint does set forth specific misapplied payments as actual damages, as well as other actual damages that were fleshed out. (Brief, ECF pages 23-27; Reply, ECF pages 11-18.) Moreover, the plaintiff-appellant in *Lessl* failed to ever proffer an amended complaint, whereas Marais did proffer an amended complaint before the motion for judgment on the pleadings was ruled upon. *Id.* at *3.

Respectfully submitted,

*/s/ Troy J. Doucet*
Troy J. Doucet, Lead Counsel (0086350)
Audra L. Tidball (0087764)
DOUCET & ASSOCIATES, INC.
4200 Regent Street; Suite 200
Columbus, Ohio 43219
Telephone: (614) 944-5219
Fax: (818) 638-5548
Email: troy@troydoucet.com
*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 28, 2013, the foregoing was electronically filed with the Court's electronic filing system, which will send a notice of the electronic filing to the following:

Justin Ristau
Nelson Reid
Daniel Gibson
Anne M. Sferra
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215
*jristau@bricker.com*
*nreid@bricker.com*
*dgibson@bricker.com*
*asferra@bricker.com*

*/s/ Troy J. Doucet*
Troy J. Doucet (0086350)

0B180 - N55

F11-00817                    PLM/dls              May 30, 2013

### IN THE COURT OF COMMON PLEAS
### FRANKLIN COUNTY, OHIO

| | |
|---|---|
| JPMorgan Chase Bank, National Association<br>800 Brooksedge Boulevard<br>Westerville, Ohio 43081 | ) CASE NO.<br>)<br>) PPN: 010-058396-00<br>)<br>) JUDGE |
| Plaintiff | )<br>) **COMPLAINT FOR FORECLOSURE** |
| -vs- | )<br>)<br>) **AND** |
| Christine Marais<br>c/o Audra Tidball, Esq.<br>Troy Doucet Consumer Litigation<br>4200 Regent Street, Suite 200<br>Columbus, Ohio  43219; | )<br>) **NOTICE UNDER THE FAIR DEBT**<br>) **COLLECTIONS PRACTICES ACT** |
| John Doe, Unknown Spouse, if any,<br>of Christine Marais<br>535 Piedmont Rd<br>Columbus, OH 43214; | ) |
| Flagstar Bank, FSB<br>5151 Corporate Drive<br>Troy, Michigan 48098; | ) |
| Dyck-O'Neal, Inc.<br>c/o CT Corporation System<br>Statutory Agent<br>1300 East Ninth Street<br>Cleveland, Ohio 44114 | ) |

EXHIBIT

PENGAD 800-631-6989

Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

0B180 - N56

```
                                    )
-and-                               )
                                    )
Treasurer of Franklin County        )
373 South High Street, 17th Floor   )
Columbus, Ohio  43215-6306          )
                                    )
            Defendants              )
                                    )
```

## FIRST COUNT

1.  Plaintiff says that it is the holder of a certain promissory note, a copy of which is hereto attached, marked EXHIBIT "A" and made a part hereof; that by reason of default in payment of the said note and mortgage securing same, it has declared said debt due; that there is due and unpaid thereon the sum of $167,796.87 plus interest at the rate of 6.00% per annum from November 1, 2010. Plaintiff further says that it has complied with all conditions precedent as set forth in the note and mortgage.

## SECOND COUNT

2.  Plaintiff incorporates herein by reference all of the allegations contained in its first count, and further says that it is the holder of a certain mortgage deed, securing the payment of said promissory note, a copy of which is attached hereto, marked EXHIBIT "B", and being Permanent Parcel Number 010-058396-00, and made a part hereof; and has been assigned to Plaintiff as evidenced by the assignment of mortgage, a copy of

0B180 - N57

which is attached hereto and marked as EXHIBIT "C"; that said mortgage is a valid and first lien upon said premises.

3.   Plaintiff says that the conditions of said mortgage have been broken by reason of default in payment, and the same has become absolute; that the Defendants named in the Complaint, have or claim to have an interest in the premises described in EXHIBIT "B".

4.   Plaintiff says that pursuant to the covenants and conditions of said mortgage deed it may, from time to time during the pendency of this action, advance sums to pay real estate taxes, hazard insurance premiums and property protection and maintenance.

5.   Plaintiff says that the Defendants, Christine Marais, John Doe, Unknown Spouse, if any, of Christine Marais, Flagstar Bank, FSB and Dyck-O'Neal, Inc. and Treasurer of Franklin County have or claim to have an interest in the premises.

W H E R E F O R E Plaintiff demands judgment against the Defendant, Christine Marais, in the sum of $167,796.87 plus interest at the rate of 6.00% per annum from November 1, 2010; that the Defendants named herein be required to answer and set up any claim that they may have in said premises or be forever barred; that the Plaintiff be found to have a valid and first lien on said premises for this amount so owing together with its advances made pursuant to the terms of the mortgage for real

estate taxes, hazard insurance premiums, and the premises be ordered appraised, advertised, and sold according to law, and that from the proceeds the Plaintiff be paid the amount found due it, and for such other and further relief as equity entitled it to receive.



---

**REIMER, ARNOVITZ, CHERNEK &**
**JEFFREY CO., L.P.A.**
Peter L. Mehler (0075283)
Douglas A. Haessig (0079200)
P.O. Box 39696
30455 Solon Road
Solon, OH 44139
Phone: (440) 600-5500 Ext. 191
Fax: 440-600-5590
Email: pmehler@reimerlaw.com

## NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

If your name appears as a Defendant in this Complaint, the following notice applies to you.

The purpose of the attached documents is to collect a debt. Any information you provide to Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., will be used for that purpose.

The amount of the debt is stated in paragraph one of this Complaint.

The plaintiff as named in this Complaint is the creditor to whom the debt is owed.

The debt described in the Complaint and evidenced by the copy of the note attached hereto will be assumed to be valid by Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., unless, within thirty days after the receipt of this notice, you dispute the validity of the debt or some portion thereof.

If you notify Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. in writing within thirty days of the receipt of this notice that the debt or any portion thereof is disputed, Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., will obtain a verification of the debt and a copy of the verification will be mailed to you by Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.

Please note that notwithstanding the foregoing, you are still responsible under state law to file a response to the Complaint, to which this Notice is attached, within twenty-eight (28) days. This twenty-eight (28) day period and the thirty (30) day period mentioned above both commence the day after you receive this Complaint. If you are uncertain of your rights or obligations under this notice or the Complaint, or if you have any questions concerning the proceedings that have been commenced by the filing of the complaint, you should consult an Attorney of your choice.

If the creditor named as plaintiff in this Complaint is not the original creditor, and if you make a request in writing to Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., within thirty days from the receipt of the notice, the name and address of the original creditor will be mailed to you by Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.

Any written requests should be addressed to Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., P.O. Box 39696, Solon, Ohio 44139.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

EXHIBIT _A_

MIN: ▮▮▮▮▮▮▮    **NOTE**    Loan Number: ▮▮▮▮▮▮▮▮

SEPTEMBER 25, 2006          COLUMBUS                    OHIO
[Date]                      [City]                      [State]

535 PIEDMONT ROAD, COLUMBUS, OHIO 43214
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 177,600.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is RESIDENTIAL FINANCE CORP, AN OHIO CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on NOVEMBER 1 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 401 N. FRONT STREET, SUITE 300, COLUMBUS, OHIO 43215

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,064.80 .

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01

Page 1 of 3    _CM_

DocMagic *eFarms* 800-649-1362
www.docmagic.com



535 Piedmont, Columbus, OH 43214

0B180 - N61     Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01

Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com



535 Piedmont Columbus OH 43214

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
CHRISTINE MARAIS                      -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                      -Borrower

PAY TO THE ORDER OF:
FLAGSTAR BANK, FSB WITHOUT RECOURSE                    See Allonge Attached

RESIDENTIAL FINANCE CORP, AN OHIO CORPORATION

BY: _____

ITS: _____                        [Sign Original Only]

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                               Page 3 of 3          DocMagic ♦Rmms 800-649-1362
                                                                  www.docmagic.com

535 Piedront Columbus, OH 43214

**ALLONGE**

Borrower(s):  CHRISTINE MARAIS

Property Address:  535 PIEDMONT ROAD, COLUMBUS, OHIO 43214

Principal Balance:  $177,600.00

Loan Date:  SEPTEMBER 25, 2006

PAY TO THE ORDER OF

FLAGSTAR BANK, FSB

Without Recourse

Company Name  RESIDENTIAL FINANCE CORP

By: _____     _____
                    (Name)                                    (Title)

            Amber D. Baldesen

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: _____

BY: _____

Multistate Note Allonge

535 Piedmont Columbus, OH 43214

15/1

EXHIBIT _B_

*(handwritten in left margin, vertical): + This instrument being re-recorded to correct legal description and to conform covers sheet #*

*(handwritten): (B) 06 (B)*

After Recording Return To:
RESIDENTIAL FINANCE CORP
401 N. FRONT STREET, SUITE 300
COLUMBUS, OHIO 43215



200611200231445
Pgs: 15  $137.00  T20060096155
11/20/2006 9:48AM  ND
Robert G. Montgomery
Franklin County Recorder

RETURN TO
Moymax Title Agency of Ohio, LLC
32 W. Hoster St Ste 220
Columbus, OH 43215
Tel. 614.221.8162

200703210048928
Pgs: 15  $136.00  T20070016556
03/21/2007 11:57AM  REFMEYNUX TIT
Robert G. Montgomery
Franklin County Recorder

[Space Above This Line For Recording Data]

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   SEPTEMBER 25, 2006   , together with all Riders to this document.
(B) "Borrower" is   CHRISTINE MARAIS, AN UNMARRIED WOMAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   RESIDENTIAL FINANCE CORP   ✓

Lender is a   OHIO CORPORATION                                                   organized
and existing under the laws of   OHIO
Lender's address is   401 N. FRONT STREET, SUITE 300, COLUMBUS, OHIO
43215

(E) "Note" means the promissory note signed by Borrower and dated   SEPTEMBER 25, 2006   .
The Note states that Borrower owes Lender   ONE HUNDRED SEVENTY-SEVEN THOUSAND SIX
HUNDRED AND 00/100                        Dollars (U.S. $ 177,600.00            ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
OCTOBER 1, 2036          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

OHIO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes                          Page 1 of 14

*(handwritten): GH*

DocMagic CDIrect 800-649-1362
www.docmagic.com

Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

0B180 - N65

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Planned Unit Development Rider
☐ Balloon Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider ☐ Second Home Rider
☐ Condominium Rider ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY            of            FRANKLIN            :
[Type of Recording Jurisdiction]          [Place of Recording Jurisdiction]

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic
Form 3036 01/01          www.docmagic.com
With Authorized Changes          Page 2 of 14

0B180 – N66

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 010-058396

which currently has the address of 535 PIEDMONT ROAD

[Street]

COLUMBUS , Ohio 43214 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim

DocMagic EForms 800-649-1362
www.docmagic.com

0B180 - N67    Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes
Page 4 of 14

DocMagic EForms 800.649.1362
www.docmagic.com

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires,

OHIO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes

Page 5 of 14

DocMagic@Source 800-649-1362
www.docmagic.com

Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes

Page 6 of 14

DocMagic EForms 800-649-1362
www.docmagic.com

Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

0B180 - N70

material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender required) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11.** Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

0B180 - N72

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes                    Page 9 of 14        *CM*

DocMagic eForms 800-649-1362
www.docmagic.com

Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092
0B180 - N73

address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply to the case of acceleration under Section 18.

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes                    Page 10 of 14          CM

DocMagic eForms 800-649-1362
www.docmagic.com

Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092
0B180 - N74

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes                          Page 11 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

0B180 – N75

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, **FRANKLIN** County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument. It being intended by this Section 24 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

DocMagic Effects 800-649-1362
www.docmagic.com

0B180 - N76

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Executed this 25 day of September 2006.

_____ (Seal)
CHRISTINE MARAIS          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

OHIO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes                    Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

(Execution in accordance with Chapter 5301 of the Revised Code.)

State of Ohio                              )
                                           ) ss.
County of Franklin                         )

The foregoing instrument was acknowledged before me this 25 day of September 2006
by CHRISTINE MARAIS, an unmarried woman

_____
Signature of Person Taking Acknowledgment

Notary Public
_____
Title

_____
Serial Number, if any

My commission expires: 06·08 2011

Jason L. Taylor
Notary Public, State of Ohio
My Commission Expires 06-08-2011

(Seal)

This Instrument Prepared By: Joseph Smith
RESIDENTIAL FINANCE CORPORATION
401 N Front St Ste 300
Columbus, OH 43215

OHIO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3036 01/01
With Authorized Changes                    Page 14 of 14

DocMagic eDocuments 800-649-1362
www.docmagic.com

OB180 - N78

## Exhibit A

Legal Description

Situated in the State of Ohio, County of Franklin and in the City of Columbus:

(313)

Being Lot Number Three Hundred Thirteen (649), OAKLAND PARK ADDITION, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book 9, page 18, Recorder's Office, Franklin County, Ohio.

*CH*

0B180 - N79    Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

EXHIBIT_____C_____

> 201209250142493
> Pgs:3      $40.00        T20120071361
> 09/25/2012    08:50AM    Electronic Recording
> Daphne Hawk
> Franklin County Recorder            ASMO

After recording return to:
**CHASE RECORDS CENTER**
**ATTN: RECORDING DEPT.**
**PO BOX 8000**
**MONROE, LA 71203**

Parcel ID No.: 010-058396

F11-00817 _____[Space Above This Line For Recording Data]_____

Loan No.: _____

MIN: _____

# OHIO ASSIGNMENT OF MORTGAGE

For Value Received, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for **RESIDENTIAL FINANCE CORP**, its successors and assigns, (herein "Assignor") does hereby assign and transfer unto JPMorgan Chase Bank, National Association, its successors and assigns, (herein "Assignee", whose address is **700 KANSAS LANE, MC 8000, MONROE, LA 71203**, all its right, title and interest in and to a certain Mortgage dated September 25, 2006 and recorded on November 20, 2006 made and executed by **CHRISTINE MARAIS**, upon the following described property situated in FRANKLIN County, State of Ohio:
Property Address: 535 PIEDMONT ROAD, COLUMBUS, OH 43214

Situated in the State of Ohio, County of Franklin and in the City of Columbus:

Being Lot Number Three Hundred Thirteen (613), OAKLAND PARK ADDITION, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book 9, page 18, Recorder's Office, Franklin County, Ohio.

such Mortgage having been given to secure payment of  One Hundred Seventy Seven Thousand Six Hundred and 00/100ths ($177,600.00), which Mortgage is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. 200611200231445), in the Office of the County Clerk of  FRANKLIN County, State of Ohio, and all rights accrued or to accrue under such Mortgage.

8/27/2012 12:46:16 PM
**MERS TELEPHONE: 1-888-679-6377**

| | | |
|---|---|---|
| Ohio Assignment of Mortgage (From MERS to a Non-MERS Servicer /Investor) | | **MERS Modified** |
| JPMorgan Chase Bank N.A. | Page 1 of 3 | 23586OH 01/12 Rev. 05/12 |



Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092

0B180 - N80

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on Sept 11, 2012            .

Mortgage Electronic Registration Systems, Inc. ("MERS"):

By: _____
Assistant Secretary     Nicole L Smiley

## ACKNOWLEDGMENT

State of Ohio                    §
                                 §
County of Franklin               §

On the 11th day of September 2012 before me, a Notary Public, personally appeared Nicole L Smiley _____, to me known, who being duly sworn, did say that he or she is the Assistant Secretary of Mortgage Electronic Registration Systems, Inc, and that said instrument was signed on behalf of said corporation.

KAREN CAMPBELL
Notary Public, State of Ohio
My Comm. Expires 08-30-2017

_Karen Campbell_
Signature of Person Taking Acknowledgment

_Karen Campbell_
Printed Name

_Notary Public_
Title or Rank

Serial Number, if any: ————

(Seal, if any)

My Commission Expires: 8-30- 2017

8/27/2012 12:46:16 PM
MERS TELEPHONE: 1-888-679-6377

Ohio Assignment of Mortgage (From MERS to a Non-MERS Servicer /Investor)          MERS Modified
JPMorgan Chase Bank N.A.          Page 2 of 3          23586OH 01/12 Rev. 05/12



Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jun 03 10:44 AM-13CV006092
0B180 - N81

——————————————————*[Space Below This Line For Prepared by Information]*——————————————————

This instrument was prepared by:
PEIRSONPATTERSON, L.L.P.
4400 ALPHA ROAD
DALLAS, TX 75244

8/27/2012 12:46:16 PM
MERS TELEPHONE: 1-888-679-6377

| Ohio Assignment of Mortgage (From MERS to a Non-MERS Servicer /Investor) | | MERS Modified |
|---|---|---|
| JPMorgan Chase Bank N.A. | Page 3 of 3 | 23586OH 01/12 Rev. 05/12 |



**THIS PAGE INTENTIONALLY LEFT BLANK**